IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CR. No. C-04-657 (4) |
| V. | § | C.A. No. C-07-202 |
| | § | |
| FERMIN GONZALEZ-RAMIREZ, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER
DISMISSING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE, AND
DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Fermin Gonzalez-Ramirez's ("Gonzalez") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 148.)  The Court concludes that it is not necessary to order a government response because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  Rule 4(b) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.  As discussed in more detail herein, the Court dismisses Gonzalez's § 2255 motion because he validly waived his right to file the claims raised therein.  Additionally, the Court denies Gonzalez a Certificate of Appealability.

1

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II.  FACTS AND PROCEEDINGS

### A.    Summary of the Offense[1]

On October 21, 2004, Mary E. Banda drove a Dodge Stratus into the Sarita, Texas

U.S. Border Patrol Checkpoint.  During the inspection, agents noticed that the rear of the

vehicle was riding low as if there was a large amount of weight in the trunk.  Banda

consented to a search of the trunk, which revealed three illegal immigrants covered with a

blanket.  All three were citizens of Mexico without immigration documents.  In addition, all

three were sweating profusely and their clothes were soaked with sweat.

One of the three, Maria Reyes Carranza-Mendoza, age 23, could not move her body

and was unable to get out of the trunk.  She was sick and gasping for air.  Agents removed

her from the trunk and placed her on a stretcher.  The agents requested an ambulance and

also began medical treatment on Carranza-Mendoza, but she became incoherent and began

vomiting, convulsing, and her fingers and face turned blue.  Shortly thereafter, the

ambulance arrived and paramedics began to administer fluids intravenously to lower her

body temperature, but she did not respond.  A halo flight was requested and Carranza-

Mendoza began to go into cardiac arrest while waiting for the halo flight.  She was taken by

---

[1] The facts of the offense are taken from Gonzalez's Presentence Investigation Report ("PSR) at ¶¶ 4-17.

halo flight to Christus Spohn Memorial Medical Center in Corpus Christi where she later died at approximately 6:15 p.m. An autopsy was performed and revealed the cause of death as Hyperthermia.

After an investigation that included the debriefing of Banda and material witnesses, Immigration and Customs Enforcement agents arrived at the residence of a co-defendant, Vasquez, which had been used as a "stash" house for the illegal aliens. Vasquez, co-defendant Macareno-Mejia and Gonzalez were all present, along with other individuals determined to be illegal immigrants from Mexico. Gonzalez was interviewed by agents and stated that he and Macareno-Mejia had smuggled the three aliens from Banda's car into the United States by crossing the Rio Grande River in a boat. Gonzalez stated that the illegal immigrants paid him a smuggling fee. This was consistent with the testimony of one of the illegal aliens, who indicated that Gonzalez recruited individuals from his hometown in Mexico to be smuggled into the United States, and that he told each alien the smuggling fee would be $2,000 to be transported to Houston.

## B.    Criminal Proceedings

On November 18, 2004, Banda, Gonzalez, Vasquez and Macareno-Mejia were charged in a three-count indictment. (D.E. 55.) In Count One, they were charged with aiding, abetting and assisting one another to knowingly transporting and moving Carranza-Mendoza, an illegal alien, within the United States in violation of law by means of a motor vehicle, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(v)(II) and

1324(a)(1)(B)(iv).  (D.E. 55.)  The indictment further alleged that the violation resulted in

the death of Carranza-Mendoza.  The second and third counts charged them with aiding,

abetting and assisting one another to knowingly transport and move the other two illegal

aliens found in the trunk (Jose Angel Carranza-Gomez and Concolacion Villeda-Agullar,

respectively), within the United States in violation of law by means of a motor vehicle, in

violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(v)(II) and 1324(a)(1)(B)(iv).  (D.E.

55 at 2-3.)

On February 10, 2005, Gonzalez pleaded guilty to Count One pursuant to a written

plea agreement.  (D.E. 90; D.E. 91.)  In exchange for his guilty plea to Count One and his

waiver of appellate and § 2255 rights (discussed below), the government agreed to move

for the dismissal of Counts Two and Three at sentencing, to recommend that he receive the

maximum credit for acceptance of responsibility and to recommend a sentence at the lowest

end of the applicable guideline range.  (D.E. 91 at ¶¶ 1-2.)

The plea agreement contained a voluntary waiver of Gonzalez's right to appeal and

to file a § 2255 motion:

> Defendant is aware that Title 18, United States Code, Section
> 3742 affords a defendant the right to appeal the sentence
> imposed.  The defendant waives the right to appeal the sentence
> imposed or the manner in which it was determined.  The
> defendant may appeal only (a) the sentence imposed above the
> statutory maximum or (b) an upward departure from the
> Sentencing Guidelines, which had not been requested by the
> United States as set forth in Title 18, United States Code,
> Section 3742(b).  Additionally, the defendant is aware that Title

> 28, United States Code, Section 2255, affords the right to
> contest or "collaterally attack" a conviction or sentence after
> the conviction or sentence has become final.  The defendant
> waives the right to contest his/her conviction or sentence by
> means of any post-conviction proceeding.

(D.E. 91 at ¶ 7 (emphasis in original).)  The agreement was signed by Gonzalez and his

counsel.  (D.E. 91 at 5.)

At Gonzalez's rearraignment, the prosecutor summarized the written plea agreement,

and included the statement: "There is also a waiver of appeal in that the Defendant waives

his right to appeal the sentence imposed and the manner in which it was determined,

including any collateral attack the Defendant may have under Title 28, United States Code,

Section 2255." (D.E. 127, Rearraignment Transcript ("R. Tr.") at 20.)  After the summary,

Gonzalez testified that the prosecutor's recitation was his agreement, that he had read the

plea agreement, that he understood it, that he had discussed it with his attorney and his

attorney had explained it to him, and that he had signed it.  (R. Tr. at 20-21.)

The Court also questioned Gonzalez under oath to ensure that his plea was voluntary

and knowing and to ensure that he understood and was voluntarily relinquishing his appeal

rights and right to file a § 2255 motion.  After informing him of his waiver of appellate

rights, the Court specifically admonished Gonzalez concerning his § 2255 waiver:

> **THE COURT:** ... You're also are giving up the right to file
> any later petition to challenge the conviction and sentence after
> it becomes final and you're giving up your right under Title 28,
> United States Code, Section 2255.  Do you understand that?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:** Has your attorney explained all those matters
to you?

**DEFENDANT:** Yes, sir.

(R. Tr. at 22.)  Gonzalez further testified that no one had threatened him or forced him to

plead guilty, that no one had promised him leniency in exchange for his guilty plea, and that

no one had promised him what his sentence would be.  (R. Tr. at 19, 22.)  He testified that

it was his decision to plead guilty, and that he was pleading guilty because he had

committed the offense.  (R. Tr. at 19.)     It is clear from the foregoing that Gonzalez's

waiver was knowing and voluntary.  See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to

ensure defendant understands any waiver of § 2255 rights and appellate rights prior to

accepting his plea).

The Court sentenced Gonzalez on April 21, 2005 to 46 months in the custody of the

Bureau of Prisons, to be followed by a five-year term of supervised release, and imposed

an order of restitution in the amount of $19,334.45 and a $100 special assessment.  (D.E.

110, 114.)  Judgment of conviction and sentence was entered May 3, 2005.  (D.E. 114.)

Despite his waiver of appellate rights, Gonzalez appealed.   The Fifth Circuit

dismissed the appeal in a per curiam opinion dated April 18, 2007, after finding that there

were no nonfrivolous issues for appeal.  (D.E. 150.)  His § 2255 motion was received by

the Clerk of this Court on April 30, 2007. (D.E. 148.)  It is timely.

### III.  MOVANT'S ALLEGATIONS

In his motion, Gonzalez lists five grounds for relief.  First, he alleges that the Court

erred in enhancing his sentence pursuant to U.S.S.G. § 2L1.1.[2]

Second, he claims that the Court erred in imposing a sentence that was not consistent

with the policy of the Sentencing Guidelines.  Again, he appears to be challenging the

Court's decision to apply the § 2L1.1(b) enhancements to him, because he claims that he

was not present when the aliens were loaded and should not be held responsible for what

occurred to them.

Third, he claims that his sentencing counsel was constitutionally ineffective for

failing to object to the Court's sentencing decisions and failing to argue that the Court

improperly enhanced his sentence based on facts not found by a jury or admitted by him,

in apparent reliance on United States v. Booker, 543 U.S. 220 (2005).

Fourth, Gonzalez argues that the Court violated his constitutional rights because it

sentenced him based on "a greater crime that the one to which he pleaded."  (D.E. 148 at

---

[2]  The PSR applied three enhancements under § 2L1.1, two of which related to "bodily injury or death" and all of which were adopted and applied by the Court.  (PSR at ¶¶ 22-25); D.E. 128, Sentencing Transcript ("S. Tr.") at 21.)  One of the enhancements was because the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, pursuant to U.S.S.G. § 2L1.1(b)(2)(A).  (PSR at ¶ 23.)  Another was an eight-level enhancement pursuant to U.S.S.G. § 2L1.1(b)((6)(4), because a person died during the offense. (PSR at ¶ 24.)  At one point in his supporting brief, Gonzalez references the § 2L1.1(b)(6)(4) enhancement, but it is not clear whether Gonzalez is also challenging the enhancement pursuant to U.S.S.G. § 2L1.1(b)(2)(A).

7

9.) Again, although not spelled out, this claim, too, appears to be a challenge to the § 2L1.1 enhancements and appears to rely on principles enumerated in Booker.

Fifth and finally, Gonzalez contends that he was denied effective assistance of counsel at sentencing due to a number of alleged errors by his counsel, including counsel's failure to fight deportability, a failure to fight for benefits received by U.S. citizens, a failure to seek a "downward departure for fast track under U.S.S.G. 5K2.0" and a failure to seek "downward departure for early disposition 5K3.1." (D.E. 148 at 8.)

## IV.  DISCUSSION

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982).

**B.      Waiver of § 2255 Rights**

Gonzalez's claims are not properly before the Court because he waived the claims

he raises in his § 2255 motion.  United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994)

(enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v.

McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing waiver of appeal rights). It is clear from

the rearraignment transcript that Gonzalez understood that he was waiving his right both to

appeal (except under certain circumstances) and to file any § 2255 motions, all that is

required for a knowing waiver.  See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant

understood he had a right, and understood he was giving it up).  Gonzalez's sworn

statements in open court are entitled to a strong presumption of truthfulness.  United States

v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S.

63, 74 (1977)); Wilkes, 20 F.3d at 653 (citing Blackledge for same proposition).  Indeed,

the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."

United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Those statements support

a finding that Gonzalez's waiver was knowing and voluntary.

Moreover, Gonzalez's claims fall within the scope of his waiver.  They all challenge

either the Court's sentencing decisions or allege ineffectiveness of counsel at sentencing.

Notably, none challenge the validity of his plea or his waiver.  Thus, his claims are not

properly before the Court.  See generally Wilkes, supra; White, supra.

For the foregoing reasons, Gonzalez's motion is barred in its entirety by his waiver and is therefore DISMISSED WITH PREJUDICE.

## C.    Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).   Although Gonzalez has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (emphasis added); <u>see</u> <u>also</u> <u>United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002) (applying <u>Slack</u> to COA determination in context of § 2255 proceedings). It is unnecessary for the Court to decide whether Gonzalez has stated a valid claim for relief, because he cannot establish the second <u>Slack</u> criterion.  That is, reasonable jurists would not disagree that the claims raised in his motion are barred due to his waiver.  Accordingly, Gonzalez is not entitled to a COA.

## V.  CONCLUSION

For the foregoing reasons, Gonzalez's motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255 (D.E. 148) is DISMISSED WITH PREJUDICE. Gonzalez is also DENIED a Certificate of Appealability.

Ordered this 11th day of June,  2007.

_____
HAYDEN HEAD
CHIEF JUDGE

11